McKAY, Circuit Judge,
concurring in part and dissenting in part:
I join in the court’s opinion except as to Appellant Turner. I am persuaded that the trial court erred in treating the affidavit testimony of fellow employees Jeffry J. Mangin and Gloria K. Smith as conclusory and nonprobative. This testimony, viewed in a light most favorable to Ms. Turner, is sufficient to establish a prima facie claim for disparate treatment. Based on this evidence, a trier of fact could find that “the employer imposed the discipline [on Ms. Turner] under circumstances giving rise to an inference of racial discrimination.” Maj. Op. at 753. As noted by the majority, a showing that she was treated differently than similarly situated employees is sufficient to demonstrate such circumstances. See id. The testimony is also sufficient to create a substantial fact issue concerning pretext in connection with the discriminatory demotion claim.
Far from being merely conclusory as the majority determines, the testimony of these fellow employees in the classified advertising department- represents both specific facts and specific observations which are both relevant and persuasive.
Mr. Mangin’s affidavit stated:
All of us made mistakes and Lillian made no more mistakes than the rest of us....
... When I made errors I was not written up[;] however when Lillian made errors she was written up by Rhonda Canino. The volume was enormous, as I stated above, and everyone made mistakes so why did they single out Lillian. Susan Passwalt and I even had discussions regarding the fact that Lillian was being singled out.
Appellants App., Vol. 2 at 404-05.[1] This is not mere conclusion and allegation. It is *758 statement of fact by one who knows whether his mistakes were known to their joint supervisor and who was in a clear position to observe the difference in consequences. Who better to know the facts than the one receiving preferential treatment. At the summary judgment stage it is not necessary for a witness who is integral to the environment at issue to submit a comparative table of errors or even to cite specific cases. When he says he was “not written up,” that adequately implies that his errors were known.
Ms. Smith’s testimony included the fact that “Rhonda was out to get Lillian and some of the charges were minor and common for the people working in that department. It was clear to me and many others in classified that Lillian was being badgered.” Id. at 426. This is not the “vague and conclusory” stuff the trial court held it to be. First of all, “badgering” does not lend itself to tables and charts. It is uniquely one of those things any person can recognize. This is a fellow employee, intimately and uniquely in a position both to observe and compare. Moreover, the affidavits reveal that the badgering was so open and notorious as to be a matter of common discussion within the office. The detailed differences in the frequency of errors is a matter for cross-examination at trial — not for dismissal at summary judgment.
Because Ms. Turner has presented evidence demonstrating genuine issues of material fact, I would reverse and remand for trial in her case.

. Ms. Smith's affidavit indicates that the two employees who worked at the automotive contract desk in the same position as Ms. *758 Turner, Mr. Mangin and Ms. Passwalt (or Patzwaldt), were not of minority descent. See Appellant's App., Vol. 2 at 426.